UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTHONY ERIC HESS,

      Plaintiff,

v.                                  Case No. 8:13-cv-3136-T-33EAJ

COCA-COLA REFRESHMENTS
USA, INC., ET AL.,

      Defendants.

_____/

## ORDER

This matter comes before the Court pursuant to Fourth
Party Defendant Pin Point Holdings, Inc. d/b/a Tech Trades'
(Pin Point) Motion to Dismiss Counts I and II of the Fourth
Party Complaint with Prejudice (Doc. # 62), which was filed
on November 18, 2014. Fourth Party Plaintiff Intelligrated
Systems, LLC (Intelligrated) filed a memorandum in opposition
to the Motion on December 1, 2014. (Doc. # 64). For the
reasons stated below, the Motion is denied.

## I.   Background

Plaintiff Anthony Eric Hess initiated this personal
injury action in state court on August 22, 2013, and filed
an Amended Complaint on the same day. (Doc. # 2). According
to the Amended Complaint:

> On March 31, 2011, Defendant Coca-Cola Refreshments USA, Inc. was the owner and in possession, custody and control of a premises known as the Auburndale Coca-Cola Bottling Plant in Auburndale, Polk County, Florida.
>
> At that time and place, Plaintiff Anthony Eric Hess . . . was on the premises to assist with installing a new conveyor system and held the status of an invitee. Plaintiff was wiring a control box for the new conveyor system. Plaintiff was performing his job while sitting on the floor near the end of a section of an existing conveyor. There was a pallet of orange juice on the existing conveyor that weighed about 2,000 pounds. While Plaintiff was on the floor next to the existing conveyor, an employee or agent of Defendant reversed the movement of the existing conveyor so as to cause the pallet to fall off of the existing conveyor and onto the Plaintiff.

(Id. at ¶¶ 2-3). Thereafter, on December 12, 2013, Defendant Coca-Cola Refreshments USA, Inc. removed this action on the basis of diversity jurisdiction. (Doc. # 1).

Subsequently, on July 11, 2014, Coca-Cola filed a motion for leave to assert third-party claims against Intelligrated (Doc. # 19), as Intelligrated's "potential liability [to Coca-Cola] would be dependent upon the outcome of the main claim as [Coca-Cola's] claims against it would be based on theories of indemnification." (Id. at 2). This Court granted Coca-Cola's request on July 29, 2014 (Doc. # 23), and Coca-Cola filed its Third-Party Complaint (Doc. # 24) on July 31, 2014, and Amended Third-Party Complaint on September 30, 2014

(Doc. # 37). In its Amended Third-Party Complaint, Coca-Cola alleges that Intelligrated produced and provided a conveyor system to Coca-Cola pursuant to a Master Equipment and Services Purchase Agreement. (See Id.).

On October 3, 2014, Intelligrated filed a Fourth Party Complaint against Pin Point alleging (1) Breach of Contract, (2) Common Law Indemnification, and (3) Equitable Subrogation. (See Doc. # 39). According to the Fourth Party Complaint, Intelligrated did not self-perform the conveyor installation work at Coca-Cola's Auburndale Bottling Plant. (Id. at ¶ 10). Rather, Intelligrated retained the services of professional employees from Pin Point – including Hess – pursuant to a Temporary Manpower Subcontractor Labor Agreement (Agreement), effective January 6, 2011, which was in effect at all times material to this action. (Id. at ¶ 8; see Doc. # 39-1). Thus, assuming Hess' allegations are true, Intelligrated contends that it "was neither a legal cause of [Hess'] alleged damages or contributed to the legal cause of those alleged damages." (Id. at 13).

Pin Point filed the present Motion on November 18, 2014, seeking dismissal with prejudice of Counts I and II of the Fourth Party Complaint (Doc. # 62), which is now ripe for this Court's review.

## II.  **Legal Standard**

On a motion to dismiss, this Court accepts as true all of the factual allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In accordance with Twombly, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009) (quoting

<u>Twombly</u>, 550 U.S. at 570). A plausible claim for relief must

include "factual content [that] allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged." <u>Id.</u>

## III. **Analysis**

### A. **Count I - Breach of Contract**

According to Pin Point, Intelligrated "has not and

cannot state a plausible cause of action for Breach of

Contract because the indemnity provision in question is

unenforceable and void pursuant to Fla. Stat. § 725.06." (Doc.

# 62 at 4). The Agreement's indemnity provision in question

provides:

> SECTION 3 Indemnity. Subcontractor agrees to
> indemnify and hold Intelligrated, Owner, and their
> respective agents, employees officers and directors
> (the "Indemnified Parties") harmless from and
> against all claims, suits, damages, losses,
> liabilities, and expenses, including attorney's
> fees, arising out of or in any way related to,
> connected with, or resulting from (1)
> Subcontractor's failure to perform the Work[,] (2)
> the presence of the Subcontractor's employees and
> agents at the Project site, (3) any act of
> commission or omission by the Subcontractor, or any
> entity for which it bears responsibility, during
> the duration of this Agreement, irrespective of the
> theory upon which any claim may be based,
> including, without limitation, breach of the

5

Subcontract, breach of warranty or tort (including negligence), indemnity, strict liability or otherwise, and regardless of whether such claim, suit, loss, liability, or expense is caused in whole or in part by a party indemnified hereunder.

Subcontractor further agrees to indemnify and hold the above Indemnified Parties harmless from and against all claims, suits, damages, losses, liabilities and expenses, including reasonable attorney's fees, arising out of or in any way related to, or connected with or resulting from the use by the Subcontractor or any of its employees, agents or contractors of any patented invention, article or appliance or the incorporation thereof in the work.

(Doc. # 39-1).

Pin Point suggests that "[i]f a construction contract does not contain[] a monetary limit on the extent of indemnification which bears a reasonable commercial relationship, Florida Statute § 725.06 voids that indemnity clause." (Doc. # 62 at 5). Fla. Stat. § 725.06 states in relevant part:

(1) Any portion of any agreement or contract for or in connection with, or any guarantee of or in connection with, any construction, alteration, repair, or demolition of a building, structure, appurtenance, or appliance, including moving and excavating associated therewith, between an owner of real property and an architect, engineer, general contractor, subcontractor, sub-subcontractor, or material man or any combination thereof wherein any party referred to herein

6

promises to indemnify or hold harmless the other party to the agreement, contract, or guarantee for liability for damages to persons or property caused in whole or in part by any act, omission, or default of the indemnitee arising from the contract or its performance, shall be void and unenforceable unless the contract contains a monetary limitation on the extent of the indemnification that bears a reasonable commercial relationship to the contract and is part of the project specifications or bid documents. . . .

Fla. Stat. § 725.06(1).

Pin Point avers that the Agreement between Intelligrated and Pin Point "clearly falls under this [s]tatute 'because it was an agreement for construction and/or alteration and/or repair of an appliance – a conveyor belt.'" (Doc. # 62 at 5). "Additionally, the Agreement has no monetary limitation whatsoever on the extent of the indemnification as required by Fla. Stat. § 725.06." (Id.). Therefore, according to Pin Point, the above referenced contractual language is void and unenforceable and there is no indemnity provision for Pin Point to breach. (Id.). Thus, Pin Point argues that Intelligrated's Breach of Contract claim should be dismissed with prejudice. (Id.).

Under Florida law, the elements of a breach of contract action are (1) a valid contract, (2) a material breach, and (3) damages. See Abruzzo v. Haller, 603 So. 2d 1338, 1340

7

(Fla. 1st DCA 1992). However, "[a] court may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment." McKissack v. Swire Pac. Holdings, Inc., No. 09-22086-Civ, 2011 WL 1233370, at *3 (S.D. Fla. Mar. 31, 2011) (citing Moran v. Crystal Beach Capital, LLC, No. 8:10-cv-1037-T-30AEP, 2011 WL 17637, at *4 (M.D. Fla. Jan. 4, 2011)).

It is undisputed that Intelligrated and Pin Point entered into a valid contract – the Temporary Manpower Subcontractor Labor Agreement. (Doc. # 39 at ¶ 8; Doc. # 39-1). However, Pin Point takes issue with the indemnification provision – Section Three - contained within the Agreement. (See Doc. # 62). In order for this Court to determine whether the indemnification provision is enforceable against Pin Point, the Court would need to engage in contract interpretation; specifically, whether Fla. Stat. § 725.06 applies to the indemnification clause at issue and the pleadings. (See Doc. # 64 at 4). Such analysis is better suited for the summary judgment stage of these proceedings. Therefore, Pin Point's Motion is denied as to this issue.

**B. Count II - Common Law Indemnification**

"To state a claim for common law indemnity, a party must allege that he is without fault, that another party is at

8

fault, and that a special relationship between the two parties makes the party seeking indemnification vicariously, constructively, derivatively, or technically liable for the acts or omissions of the other party." <u>Tsafatinos v. Family Dollar Stores of Fla., Inc.</u>, 116 So. 3d 576, 581 (Fla. 2nd DCA 2013)(citing <u>Dade Cnty. Sch. Bd. v. Radio Station WQBA</u>, 731 So. 2d 638, 642 (Fla. 1999)).

According to Pin Point, Intelligrated does not plead that Pin Point is wholly at fault for Hess' injuries. (Doc. # 62 at 6). To that end, Pin Point argues that "Intelligrated cannot take the position that Pin Point is wholly at fault for Hess' injuries because they have already taken the position in prior pleadings that Coca-Cola, not Pin Point, is wholly responsible for the harm that befell Hess." (<u>Id.</u>; <u>see</u> Doc. ## 34, 38). Thus, Pin Point contends that Intelligrated has failed to plead an essential element of common law indemnity, and therefore, the common law indemnification claim should be dismissed.

While the Court notes Pin Point's position regarding possible inconsistencies in Intelligrated's prior pleadings, the Court finds it inappropriate to grant Pin Point's Motion on this ground. At this stage of the proceeding, the Court's review is limited to the four corners of the Fourth Party

9

Complaint. Upon consideration of the Fourth Party Complaint,
the Court finds that Intelligrated has sufficiently alleged
a claim for common law indemnification. Specifically,
Intelligrated avers that:

> Tech Trades owed a duty to use the reasonable care
> of a similarly situated professional tradesman when
> removing and disassembling a conveyor at Coke's
> Auburndale Bottling Plant.
>
> Tech Trades breached its duty of care owed to
> Intelligrated by failing to place a pallet stop on
> a section of conveyor after another section was
> removed.
>
> Tech Trades was actively negligent in the
> performance of its scope of work pursuant to the
> subcontract. . . .
>
> Intelligrated was not actively negligent regarding
> the defects Coke complains of.
>
> Intelligrated is without fault regarding the
> defects Coke complains of.
>
> At all times relevant, a "special relationship"
> existed between Intelligrated and its[]
> subcontractor Tech Trades, which arose pursuant to
> the subcontract. . . .

(Doc. # 39 at ¶¶ 28-33).

Furthermore, as argued by Intelligrated in its response,
Intelligrated has engaged in "alternative pleading," when it
stated "in essence" that Intelligrated is "not acknowledging

10

that Coke's allegations are true, but if they are true, then Pin Point is at fault and Intelligrated is not, but Intelligrated is being held vicariously liable for Pin Point's negligence by Coke." (Doc. # 64 at 8; see Doc. # 39 at ¶¶ 29–33).

For the reasons set forth above, and for purposes of the Court's present analysis only, Intelligrated has satisfied its burden under Rule 8(a) as to its Common Law Indemnification claim. Therefore, Pin Point's Motion is denied.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Fourth Party Defendant Pin Point Holdings, Inc. d/b/a Tech Trades' Motion to Dismiss Counts I and II of the Fourth Party Complaint with Prejudice (Doc. # 62) is **DENIED.**

(2)   Pin Point Holdings, Inc. has until and including **December 22, 2014**, to file its Answer to the Fourth Party Complaint.

11

12

        **DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>9th</u>

day of December, 2014.

                                        _____
                                        VIRGINIA M. HERNANDEZ COVINGTON
                                        UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record